**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Dr. Mark R. Geier                                    *
1800 S.E. Ranch Road
Jupiter, Florida 33478                               *

    and                                              *

David A. Geier                                       *
1800 S.E. Ranch Road
Jupiter, Florida 33478                               *

    Plaintiffs,                                      *

v.                                                   *    **Case No. 1:12-cv-01171 (RMC)**

Lommen, Abdo, Cole, King &                           *
Stagberg, P.A.
2000 IDS Center                                      *
80 South Eighth Street
Minneapolis, MN 55402                                *    **May 14, 2013**

    and                                              *

John H. Kim & Associates, P.C.,                      *
4309 Yoakum Blvd., Suite 2000
Houston, TX 77006-5587                               *    **FIRST AMENDED COMPLAINT**

    and                                              *

Conway, Homer & Chin-Caplan,                         *
16 Shawmut Street
Boston, M.A. 02116-5408                              *    **Jury Trial Demanded**

    and                                              *

Williams, Kherkher, Hart and Boundas                 *
8441 Gulf Freeway, Suite 600
Houston, TX 77017-5001,                              *

    Defendants.                                      *

**<u>FIRST AMENDED COMPLAINT</u>**

**COMES NOW** Plaintiffs, DR. MARK R. GEIER and MR. DAVID A. GEIER, by and through their attorneys, James M. Love and James R. Klimaski, and assert this Complaint and the claims stated therein against the following Defendants: LOMMEN, ABDO, COLE, KING & STAGBERG, P.A.; JOHN H. KIM & ASSOCIATES, P.C.; CONWAY, HOMER & CHIN-CAPLAN; and WILLIAMS, KHERKHER, HART AND BOUNDAS, and in support thereof, state as follows:

### THE PARTIES

1.     Plaintiff, DR. MARK R. GEIER, hereinafter referred to as "DR. GEIER," is an individual residing at 1800 S.E. Ranch Road, Jupiter, Florida 33478.

2.     Plaintiff, DAVID A. GEIER, hereinafter referred to as "MR. GEIER," is an individual residing at 1800 S.E. Ranch Road, Jupiter, Florida 33478.  (DR. GEIER AND MR. GEIER are sometimes collectively referred to herein as "the GEIERS")

3.     Plaintiffs are informed and believe, and on that basis allege, that Defendant, LOMMEN, ABDO, COLE, KING & STAGBERG, P.A., (hereinafter, "LOMMEN") is a law firm and a member or former member of a joint enterprise or joint venture ("Joint Enterprise") called the Petitioners' Steering Committee ("PSC"),[1] formed to present general causation issues to the Special Master overseeing the Omnibus Autism Proceeding, which was before the U.S. Court of Federal Claims under the National Childhood Vaccine Injury Compensation Act ("Vaccine Court").   LOMMEN also represented one or more of the individuals who filed claims in the Vaccine Court.  LOMMEN has a principal place of business at 2000 IDS Center 80 South Eighth Street Minneapolis, MN 55402.

---

[1] Plaintiffs assert that the PSC was a joint venture, a joint enterprise, or both.  For the sake of simplicity, Plaintiffs adopt the more inclusive "Joint Enterprise" to refer to the PSC throughout this First Amended Complaint.  Despite the use of this term, Plaintiffs contend that the PSC was one or both joint enterprise and joint venture, the elements of which are quite similar.

4.      Plaintiffs are informed and believe, and on that basis allege, that at all relevant times herein mentioned, Defendant LOMMEN was a member of, and agent and representative for, the Joint Enterprise, and in doing those things hereinafter alleged, was a member of, and an agent and representative for, the Joint Enterprise.

5.      Plaintiffs are informed and believe, and on that basis allege, that Defendant, JOHN H. KIM & ASSOCIATES (hereinafter, "KIM") is a law firm and is or was a member of the Joint Enterprise.  KIM also represented one or more of the individuals who filed claims in the Vaccine Court.  KIM has a principal place of business at 4309 Yoakum Blvd., Suite 2000 Houston, TX 77006-5587.  John Kim was previously affiliated with Gallagher, Lewis, Downey & Kim.

6.      Plaintiffs are informed and believe, and on that basis allege, that at all relevant times herein mentioned, Defendant KIM was a member of, and an agent and representative for, the Joint Enterprise, and in doing those things hereinafter alleged, was a member of, and an agent and representative for, the Joint Enterprise.

7.      Plaintiffs are informed and believe, and on that basis allege, that Defendant, CONWAY, HOMER, & CHIN-CAPLAN ("hereinafter, "CONWAY") is a law firm and is or was a member of the Joint Enterprise.  CONWAY also represented one or more of the individuals who filed claims in the Vaccine Court.  CONWAY has a principal place of business at 16 Shawmut Street Boston, Mass. 02116-5408.

8.      Plaintiffs are informed and believe, and on that basis allege, that at all relevant times herein mentioned, Defendant CONWAY was an agent and representative of the Joint Enterprise, and in doing those things hereinafter alleged, was a member of, and an agent and representative for, the Joint Enterprise.

9.      Plaintiffs are informed and believe, and on that basis allege, that Defendant, WILLIAMS, KHERKHER, HART AND BOUNDAS (hereinafter, "WILLIAMS KHERKHER," is a law firm and is or was a member of the Joint Enterprise.  WILLIAMS KHERKHER also represented one or more of the individuals who filed claims in the Vaccine Court.  WILLIAMS KHERKHER has a principal place of business at 8441 Gulf Freeway, Suite 600 Houston, TX 77017-5001.

10.     Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned, Defendant WILLIAMS KHERKHER was a member of, and an agent and representative for, the Joint Enterprise, and in doing those things hereinafter alleged, was a member of, and an agent and representative for, the Joint Enterprise.

11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because no defendant is a resident of or maintains its principal place of business in the state in which Plaintiffs are domiciled, and the amount in controversy, without interest, costs or attorneys' fees, exceeds the jurisdictional amount.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events or omissions giving rise to Plaintiffs' claims took place. Defendants also have sufficient ties to Washington D.C. as to allow this Court to exercise general jurisdiction over them.

## FACTS RELEVANT TO THE JOINT ENTERPRISE

13.     By July 2002, more than four hundred cases had been filed in the Vaccine Court in which the petitioner had alleged that their autism was caused by certain vaccinations they received.

14.    Because of the large number of autism-related cases, counsel representing some of the petitioners in the Omnibus Autism Proceeding, including Defendant KIM (operating as Gallagher, Lewis, Downey & Kim) and members of Defendant CONWAY, participated in a series of informal advisory committee meetings with the Office of Special Masters (OSM) to determine how best to deal with these claims.  The OSM selected these particular firms to participate in the meetings because they were part of the small number of law firms representing the vast majority of pending autism cases.  As a result of the informal advisory committee meetings, counsel made a number of recommendations to the OSM relating to the prosecution of the autism cases, including the procedure ultimately adopted by the OSM wherein counsel would present a series of test cases in an attempt to prove causation.

15.    In addition to the procedural recommendations, counsel involved in the advisory committee meetings proposed that a team of petitioners' lawyers be selected to represent all of the petitioners in the Omnibus Autism Proceeding.   Members of the informal advisory committee, including Defendants KIM and CONWAY, organized and became founding members of the initial PSC for this purpose.  The OSM sanctioned the PSC's presentation of general causation issues on behalf of all petitioners wishing to participate and encouraged other firms who wished to become members of the PSC to contact its existing members.  According to the OSM, counsel, interacting among themselves, were to determine the membership of the PSC. Although the OSM retained the power to resolve any disputes over membership for the presiding special master, the PSC was otherwise left to develop and present the petitioners' cases as it saw fit.  The OSM did not require the PSC to be of a certain size, to be organized in a particular way, or to obtain approval from the OSM or special master prior to taking any action.  The OSM did not grant the PSC legal status or confer on it the power to enter into contracts or conduct its

business; those aspects of the organization were left entirely to its membership. Furthermore, petitioners' counsel were not required to be members of the PSC in order to access, use, and/or rely upon information or positive outcomes that resulted from the PSC's work.

16.     The membership of the PSC selected attorneys from its membership to serve on the "Executive Committee," which coordinated the prosecution of the general causation cases. The Executive Committee recruited members for subcommittees and assigned tasks such as conducting discovery, identifying experts, participating in motion practice, reviewing research, and reviewing individual case files, among others. Members of the Executive Committee were generally attorneys associated with law firms willing to make significant financial and/or manpower contributions to support the prosecution of the test cases. Defendants KIM, LOMMEN, and WILLIAMS KHERKER all had members serving on the Executive Committee. In addition, Defendants KIM, LOMMEN, and WILLIAMS KHERKER had members serving on the Legal Issues Subcommittee and the Expert Subcommittee. John Kim of Defendant KIM served as Co-Chair of the Executive Committee, and Thao Ho of WILLIAMS KHERKER served as Co-Chair of the Expert Committee. This formal subcommittee structure was in place at the time the contract at issue in this case was executed.

17.     Prior to April 2, 2003, John Kim of Defendant KIM was designated as lead counsel for the PSC. He remained lead counsel until January 2008.

18.     The members of the PSC each had an equal right to control the actions of the PSC through its open decision-making process. The PSC made decisions regarding the presentation of test cases to the Vaccine Court on an *ad hoc* basis through telephone conversations between individual attorneys who were actively working on cases; conference calls open to all attorneys representing one or more petitioners in the Omnibus Autism Proceeding (whether those attorneys

were actively working on the cases or not); and emails and written correspondence between the attorneys. In addition, the PSC held numerous meetings for petitioners' counsel in Washington D.C. where presentation of the test cases was a frequent topic of discussion. Decisions were generally made by consensus, with each member attorney preserving the right at all times to opt out of the PSC and pursue individual claims for their clients.

19.     The PSC maintained a bank account separate and apart from the accounts of its member firms. PSC members, including Defendants KIM, LOMMEN, and WILLIAMS KHERKER contributed significant funds to this account for payment of the PSC's expenses. The Executive Committee issued a set of guidelines identifying the expenses that were eligible for reimbursement from the PSC's funds. Members requesting reimbursement needed approval by a consensus of the PSC's members.

20.     PSC members worked together to complete discovery and enter into necessary contracts, including leases, expert witness contracts, and contracts for and other services. PSC members hired and consulted with expert witnesses, participated in meetings with the Vaccine Court, prepared pleadings, presented the test cases, and filed appeals.

21.     Individual members of the PSC acted as agents of the PSC in signing contracts on behalf of the PSC to obtain goods and services needed to further the presentation of the test cases. These contracts were not subject to court approval.

22.     In organizing and operating the PSC, Defendants KIM, CONWAY, LOMMEN, and WILLIAMS KHERKER, along with other counsel, voluntarily joined together to form a Joint Enterprise.

23.     All of the members of said Joint Enterprise shared in the common goal of proving, through test cases, that certain vaccines, or ingredients in those vaccines, caused autism or other autism-causing neurological changes in petitioners.

24.     Each member of the Joint Enterprise, including Defendants, had a stake in the outcome of these test cases as each represented one or more petitioners involved in the Omnibus Autism Proceeding.

25.     Each member of the Joint Enterprise, including Defendants, voluntarily joined the Joint Enterprise and retained the right to opt out at any time.  Defendants' high level of participation in the activities of the PSC and significant contributions signaled their agreement with, and level of commitment to, the pursuit of the Joint Enterprise's goals.

26.     Each member of the Joint Enterprise, including Defendants, had a right to participate in the decision-making process of the Joint Enterprise.

27.     As a result of a joint fee petition, a portion of the PSC's costs were reimbursed by the Vaccine Court, and each member of the Joint Enterprise, including Defendants, were in turn reimbursed a pro rata share based on their investment in the Joint Enterprise.  Further, each member also received payment of their legal fees from the Vaccine Court, which represented the time and effort each invested into achieving the Joint Enterprise's common goal, i.e. the presentation of the general causation test cases.  The joint fee petition did not include any time or costs associated with the members' work on their individual clients' cases.

28.     Each member of the Joint Enterprise, including Defendants, further benefitted from their participation in the Joint Enterprise because none of the members possessed sufficient resources to present the test cases on its own.  By combining the money, time, knowledge and effort of each of the members, including Defendants, they PSC members stood to maximize their

clients' best chance for success in the Vaccine Court.  Moreover, the PSC members spread their financial risk.  Each member of the Joint Enterprise, including Defendants, bore a pro rata share of the potential if the Vaccine Court refused to reimburse all or some portion of the PSC's costs. By creating and joining a Joint Enterprise, Defendants were able to serve their clients more efficiently and maximize their own returns.

29.     The Joint Enterprise was voluntarily dissolved after the test cases were presented to the Vaccine Court and the appeals concluded.  The PSC's representatives reported to the OSM that "the group effort on the . . . cases ended with the conclusion of the appeals, and the resolution of most of the attorney fees and costs applications, related to the test cases."  The OSM's "Autism Update" issued on January 12, 2011, included an acknowledgement that the PSC had been disbanded.

30.     The Joint Enterprise known as the PSC was organized by its members, sanctioned by the OSM, run independently by its members without court supervision, and ultimately voluntarily disbanded by its members once their common goals had been achieved.

## COUNT ONE – BREACH OF WRITTEN CONTRACT
### (Liability for Defendants as Joint Venturers or Members of a Joint Enterprise)

31.     Plaintiffs hereby incorporate paragraphs 1 through 30 by reference and request that they be made a part hereof.

32.     Plaintiff DR. GEIER is a physician formerly engaged in the practice of medicine, a medical researcher, and an expert consultant and witness.  DR. GEIER was formerly a Board Certified Genetics Counselor, a Fellow of the American College of Medical Genetics,[2] and a

---

[2] Following the revocation of DR. GEIER's medical license in Maryland for, in part, allegedly misrepresenting  himself as a geneticist, the American Board of Medical Genetics revoked his certification.  The revocation of DR. GEIER's license is currently under judicial review in the Circuit Court for Montgomery County, Maryland.

Fellow of the American College of Epidemiology. DR. GEIER is well known in his field of expertise and has provided expert testimony on many occasions.

33.    Plaintiff MR. GEIER is an individual who is engaged in the business of providing healthcare services, is a medical researcher, and provides expert consultant services.

34.    Sometime during the latter part of 2003, DR. GEIER was visited at his home, then in Maryland, by various members of the Joint Enterprise known as the PSC. These members, acting as agents of the PSC, represented to Dr. Geier the nature of the PSC, Defendants' membership in the PSC, and the purpose of the PSC. As a result, Dr. Geier understood that the PSC was a group of law firms, which included Defendants, that had pooled their resources and were working together to present test cases to the Vaccine Court. The PSC informed DR. GEIER that the PSC wanted to hire him for consulting services and other related services such as providing expert witness testimony to support the presentation of the test cases.

35.    On or about September 18, 2003, DR. GEIER and the PSC entered into a Consulting Agreement whereby DR. GEIER agreed to provide consulting services to the PSC pursuant to certain agreed terms. Kathleen Dailey, an attorney with one of the Joint Enterprise's member firms, signed the Consulting Agreement on behalf of the PSC as "Member NVICP PSC Exec. Committee." By signing the Consulting Agreement, Ms. Dailey was acting as an agent of the Joint Enterprise.

36.    Plaintiffs had previously entered into consulting agreements with individual members of the PSC for work on other cases. However, it was represented to DR. GEIER, and DR. GEIER believed, that by entering into the Consulting Agreement, he would be working for the Joint Enterprise, which included Defendants, and not directly for Ms. Dailey or her law firm.

37.    The 2003 Consulting Agreement provided, *inter alia*, that the PSC "….shall be responsible for payment to Geier [DR. GEIER] and that payment is due to Geier on a timely basis regardless of the timing or outcome of any settlement, litigation or contemplated litigation."

38.    The 2003 Consulting Agreement referenced above further provided for the amount of compensation the Defendants would pay DR. GEIER for work performed by him. DR. GEIER thereafter submitted invoices to the PSC and was paid for most (but not all) of the fees reflected in his 2003-2004 invoices.

39.    On or about October 8, 2004, Plaintiffs the GEIERS signed a written amendment to the 2003 agreement, drafted by members of the PSC, entitled "Expert Consulting Agreement" (hereinafter "2004 Amendment").  At the time that the GEIERS signed the 2004 Amendment, the Defendants represented to Plaintiffs that, going forward, the PSC could not afford to pay Plaintiffs on a monthly basis.  However, the Defendants assured the GEIERS that payment under the 2003 Consulting Agreement and the 2004 Amendment would be deferred until such time as the Vaccine Court decided the PSC's fee application that would later be submitted to the Vaccine Court.  The Defendants further assured the GEIERS that the payment of their fees was not contingent, and that the Defendants would fully pay the Plaintiffs their fees at that time.

40.    Plaintiffs, who did not draft the 2004 Amendment, understood the contract to state that payment of Plaintiffs' fees would be deferred until the Joint Enterprise submitted its fee application to the Vaccine Court, at which time the Joint Enterprise would be in a better position to pay the Plaintiffs.  As the PSC had previously paid nearly all of the invoices submitted by DR. GEIER under the 2003 Consulting Agreement, Plaintiffs had no reason to doubt that the PSC would be unable or unwilling to pay them for the work performed under the 2004 Amendment.

41.    No other expert or consultant retained by the PSC was asked or required to defer his or her fees.  All other experts and consultants retained by the PSC were paid on an ongoing basis.

42.    The 2004 Amendment was signed by Michael Williams "on behalf of the Petitioners' Steering Committee."  As with the initial Consulting Agreement, by signing the 2004 Amendment, Mr. Williams was acting as an agent of the Joint Enterprise.  It was represented to Plaintiffs, and Plaintiffs believed, that by signing the 2004 Amendment, they would be working for the Joint Enterprise and not directly for Mr. Williams or his law firm.

43.    In the 2004 Amendment to the 2003 Consulting Agreement, the Defendants further agreed to compensate DR. GEIER, for "work done under the Vaccine Compensation Act" at the rate of $250.00 per hour for reading time and time spent in DR. GEIER's home or office and $300.00 per hour for time spent away including travel and work time, but excluding sleep time.  The Defendants further agreed to pay DR. GEIER $400.00 per hour for time spent giving depositions or other testimony and to reimburse DR. GEIER for all expenses incurred. The Defendants further agreed to pay DR. GEIER $55.00 per hour for secretarial support time.

44.    The Defendants also agreed to pay DR. GEIER for work done in civil litigation at the rate of $325.00 per hour for reading time and time spent in Plaintiffs' home or office and $400.00 per hour for time Plaintiff spent away including travel and work time but excluding sleep time.

45.    A significant portion of the services rendered by Plaintiffs under the 2003 Consulting Agreement and the 2004 Amendment thereto took place in Washington, D.C. Specifically, the GEIERS met with members of the Executive Branch and Congress regarding their access to the Vaccine Safety Datalink ("VSD"); they attended multiple scientific

conferences in Washington D.C. that related to the issues being presented by the PSC; they attended meetings with PSC attorneys; they attended meetings with Drs. Hirsch and Young, with whom they worked on the VSD Study, at their offices at George Washington University in Washington D.C.; they performed research and created computer programs using the facilities at George Washington University; they performed related services at Georgetown University; and, though ultimately they were not asked to testify, the GEIERS were prepared to do so at the Vaccine Court in Washington D.C.

46.     Defendants likewise traveled to Washington D.C. in furtherance of their contract with the GEIERS.   Specifically, Defendants attended Executive and Expert Subcommittee meetings in Washington D.C., attended status conferences in Washington D.C., met with Dr. Hirsch and others working on research with the GEIERS in Washington D.C., and met with the GEIERS in Washington D.C. to discuss the GEIERS' research and other issues related to the test cases.

47.     The GEIERS submitted invoices for services rendered under the 2004 Amendment on an ongoing and timely basis while continuing to provide consulting services to the PSC, but none of those invoices was paid.

48.     The combined outstanding balance owed under the 2003 Consulting Agreement and the 2004 Amendment is approximately Six Hundred Thousand Dollars ($600,000.00). Despite Plaintiffs' demand for payment, the PSC and its members, including Defendants, refuses to pay the GEIERS as agreed.

49.     The PSC materially breached its contract with DR. GEIER and MR. GEIER, by failing to pay them pursuant to the terms of the contract.

50.     As members of the Joint Enterprise, each of the Defendants is liable to the GEIERS for the breach of contract committed by the PSC.

**WHEREFORE,** Plaintiffs, DR. GEIER and MR. GEIER, demand judgment against the Defendants jointly and severally, in the amount of Six Hundred Thousand Dollars ($600,000.00), plus prejudgment interest at the rate of six percent (6%) per annum on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief as this Court deems reasonable and appropriate.

## COUNT TWO – BREACH OF CONTRACT

51.     Plaintiffs hereby incorporate paragraphs 1 through 50 by reference and request that they be made a part hereof.

52.     In the alternative, the PSC is not properly characterized as a joint venture or joint enterprise or any other legally cognizable organization (*e.g.*, corporation, partnership, limited liability company, etc.) that can properly be a party to or perform a contract.

53.     By designating "the PSC" as the party to the 2003 Consulting Agreement and the 2004 Amendment, the Defendants were implicitly entering into a contract on their own behalf and on behalf of every other law firm so identifying itself as belonging to the PSC.  Reference to "PSC" in the contracts was but a shorthand reference to the entire consortium of law firms participating as parties to this contract.  By signing the contract, Mr. Williams acted as a representative and agent for each of these law firms, including Defendants.

54.     DR. GEIER submitted invoices to the PSC pursuant to the 2003 Consulting Agreement and was paid for most (but not all) of these invoices.

55.    The GEIERS submitted invoices for services rendered under the 2004 Amendment on an ongoing and timely basis while continuing to provide consulting services to the PSC, but none of those invoices were paid.

56.    The combined outstanding balance owed under the 2003 Consulting Agreement and the 2004 Amendment is approximately Six Hundred Thousand Dollars ($600,000.00). Despite Plaintiffs' demand for payment, the Defendants refuse to pay the GEIERS as agreed.

57.    The members of the PSC, including Defendants, materially breached their contract with DR. GEIER and MR. GEIER, by failing to pay them pursuant to the terms of the contract.

WHEREFORE, Plaintiffs, DR. GEIER and MR. GEIER, demand judgment against the Defendants in the amount of Six Hundred Thousand Dollars ($600,000.00), plus prejudgment interest at the rate of six percent (6%) per annum on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief as this Court deems reasonable and appropriate.

## COUNT THREE – RATIFICATION OF WRITTEN CONTRACT

58.    Plaintiffs hereby incorporate paragraphs 1 through 57 by reference and request that they be made a part hereof.

59.    Alternatively, each of the Defendants represented one or more petitioners in the Omnibus Autism Proceeding before the Vaccine Court.  Each Defendant was a member of the PSC.  In order to present the test cases, the PSC entered into contracts with expert witnesses and consultants, including the 2003 Consulting Agreement and 2004 Amendment thereto with Plaintiffs.

60.    Defendant KIM knew that the PSC had entered into a contract with Plaintiffs, was aware of the contract's terms, and by its actions, KIM ratified said contract. At the time both the Consulting Agreement and the Amendment were signed, Defendant KIM was designated as lead counsel of the PSC and also served as a member of the PSC's Executive Committee and Expert Subcommittee. Emails to and from KIM around the time the 2003 Consulting Agreement was executed and up to the execution of the 2004 Amendment include discussions regarding the GEIERS' work, their bills and expenses, and a plan to alter the way the PSC compensated the GEIERS for their work. As lead counsel and a member of the Expert Subcommittee, KIM participated in Expert Subcommittee meetings/conferences and knew that Dr. Geier had been designated as an expert in the Omnibus Autism Proceeding. Further, KIM was privy to research provided to the PSC by the GEIERS as a result of the Consulting Agreement and Amendment thereto and even met with with Dr. Hirsch to discuss his research with the GEIERS. KIM also contributed money to the PSC's common fund, which was used to pay those invoices issued pursuant to the 2003 Consulting Agreement. At no time did KIM attempt to terminate the PSC's contract with the Plaintiffs or take any steps to disavow it.

61.    Defendant LOMMEN knew that the PSC had entered into a contract with Plaintiffs and the terms thereof  and, by its actions, ratified said contract. At the time both the Consulting Agreement and the Amendment were signed, at least one member of Defendant LOMMEN served as a member of the PSC's Executive Committee and Expert Subcommittee. Emails to and from LOMMEN around the time the 2003 Consulting Agreement was executed and up to the execution of the 2004 Amendment include discussions regarding the GEIERS' work, their bills and expenses, and a plan to alter the way the PSC compensated the GEIERS for their work. As a member of the Expert Subcommittee, LOMMEN participated in Expert

Subcommittee meetings/conferences and knew that Dr. Geier had been designated as an expert in the Omnibus Autism Proceeding.  Further, LOMMEN was privy to research provided to the PSC by the GEIERS as a result of the Consulting Agreement and Amendment thereto.  LOMMEN also contributed money to the PSC's common fund, which was used to pay those invoices issued pursuant to the 2003 Consulting Agreement.  At no time did LOMMEN attempt to terminate the PSC's contract with the Plaintiffs or take any steps to disavow it.

62.    Defendant WILLIAMS KHERKER knew that the PSC had entered into a contract with Plaintiffs and the terms thereof  and, by its actions, ratified said contract.  At the time both the Consulting Agreement and the Amendment were signed, at least one member of Defendant WILLIAMS KHERKER served as a member of the PSC's Executive Committee and two served as members of the Expert Subcommittee, including that committee's co-chair.  Emails to and from WILLIAMS KHERKER around the time the 2003 Consulting Agreement was executed and up to the execution of the 2004 Amendment include discussions regarding the GEIERS' work, extensive discussions regarding their bills, expenses and managing expectations, and a plan to alter the way the PSC compensated the GEIERS for their work.  As a member of the Expert Subcommittee, WILLIAMS KHERKER participated in Expert Subcommittee meetings/conferences and knew that Dr. Geier had been designated as an expert in the Omnibus Autism Proceeding.  Further, WILLIAMS KHERKER was privy to research provided to the PSC by the GEIERS as a result of the Consulting Agreement and Amendment thereto.  WILLIAMS KHERKER also contributed money to the PSC's common fund, which was used to pay those invoices issued pursuant to the 2003 Consulting Agreement.   At no time did WILLIAMS KHERKER attempt to terminate the PSC's contract with the Plaintiffs or take any steps to disavow it.

63.    Defendant CONWAY knew that the PSC had entered into a contract with Plaintiffs and the terms thereof  and, by its actions, ratified said contract.  Defendant was a founding member of the PSC and communicated regularly with other members via email regarding research, including that of the GEIERS.  Just prior to the execution of the 2004 Amendment, multiple emails related to the GEIERS and other experts were exchanged between members of CONWAY and other PSC firms.  CONWAY knew it was being held out as a member of the PSC, knew the GEIERS had signed a contract with the PSC, and it took no steps to terminate or disavow said contract.

64.    By failing to disavow the contract, accepting the benefits of the contract and contributing to the performance thereof, each of the Defendants intended to and did ratify the PSC's contract as its own and is liable for any breach thereof.

65.    The Defendants breached the contract by failing to pay the GEIERS the amounts due thereunder.

**WHEREFORE,** Plaintiffs, DR. GEIER and MR. GEIER, demand judgment against the PSC DEFENDANTS jointly and severally, in the amount of Six Hundred Thousand Dollars ($600,000.00), plus prejudgment interest at the rate of six percent (6%) per annum on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief as this Court deems reasonable and appropriate.

**COUNT FOUR – BREACH OF IMPLIED CONTRACT**

66.    Plaintiffs, DR. GEIER and MR. GEIER, incorporate paragraphs 1 through 65, inclusive, by reference and requests that they be made a part hereof.

67.    In the alternative, each of the Defendants knew that the PSC was not a joint venture, joint enterprise, or other form of legally recognized entity that could be a party to or

perform a contract.  In designating "the PSC" as the party to the 2003 contract and the 2004 amendment thereto, the Defendants were implicitly entering into a contract on their own behalf.

68.    The GEIERS provided valuable research and consulting services which were utilized by Defendants in preparing and presenting the test cases to the Vaccine Court.

69.    Plaintiff DR. GEIER submitted invoices for services rendered under the 2003 Consulting Agreement but was not paid for all of these services.  Those payments that were made were comprised of money contributed to a common fund by members of the PSC, including Defendants.  Members contributed to the common fund for the purpose of paying joint expenses.

70.    By agreeing to pay the GEIERS on a deferred basis in the 2004 Amendment, Defendants understood that payment to the GEIERS would be made from this same common fund but at a later time when presumably both the PSC and its member firms would have more funds available to them.  Defendants understood that their contributions to the common fund would be required to fully pay for the GEIERS' services.  As such, Defendants were on notice that the GEIERS would expect to be paid by them should the PSC have insufficient funds to satisfy the contract.

71.    The GEIERS submitted invoices for services rendered under the 2004 Amendment on an ongoing and timely basis while continuing to provide consulting services to the PSC, but none of those invoices were paid.  Copies of those invoices are attached hereto and requested to be made a part hereof.

72.    The combined outstanding balance owed under the 2003 Consulting Agreement and the 2004 Amendment is approximately Six Hundred Thousand Dollars ($600,000.00). Despite Plaintiffs' demand for payment, the Defendants refuse to pay the GEIERS as agreed.

73.    The Defendants materially breached their contract with DR. GEIER and MR. GEIER, by failing to pay them pursuant to the terms of their implied contract.

**WHEREFORE,** Plaintiffs, DR. GEIER and MR. GEIER, demand judgment against the Defendants jointly and severally, in the amount of Six Hundred Thousand Dollars ($600,000.00), plus prejudgment interest at the rate of six percent (6%) per annum on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief as this Court deems reasonable and appropriate.

### COUNT FIVE – UNJUST ENRICHMENT

74.    Plaintiffs, DR. GEIER and MR. GEIER, incorporate paragraphs 1 through 73, inclusive, by reference and requests that they be made a part hereof.

75.    For several years, the GEIERS performed all consulting, research, and other services as requested by the PSC without receiving payment.  These services aided the PSC and its members in assembling and presenting the test cases to the Vaccine Court.  The Defendants herein acknowledge, accepted, and retained the benefit conferred on them by the GEIERS under such circumstances as to make it inequitable for them to retain the benefit without payment of its value.  The GEIERS reasonably expected the PSC's members, including Defendants, to compensate them for their services should the PSC be unable to do so as the PSC derived all of its funds from member contributions to a PSC account.

76.    Further, the GEIERS' research for the PSC was peer-reviewed and published in a highly rated scientific journal. This publication was admitted into evidence during the test cases, thereby greatly contributing to the Defendants' ability to demonstrate that the petitioners' claims were brought in good faith.  The prerequisite demonstration of good faith by the Defendants led the Department of Justice to file a response to the fee application that omitted any objection

based on a lack of good faith by the Defendants.  The Defendants' claim for fees were settled for sixty-five percent (65%) of the amount claimed.[3]  On information and belief, Plaintiffs believe that Defendants were awarded millions in fees.

77.    Plaintiffs, DR. GEIER and MR. GEIER, have suffered compensatory damages, plus interest and the costs of this suit by virtue of the uncompensated work they performed and the considerable unjust enrichment bestowed upon the Defendants.

**WHEREFORE,** Plaintiffs, DR. GEIER and MR. GEIER, demand judgment against the Defendants jointly and severally, in the amount of Six Hundred Thousand Dollars ($600,000.00), plus prejudgment interest at the rate of six percent (6%) per annum on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief as this Court deems reasonable and appropriate.

### COUNT SIX – JOINT AND SEVERAL LIABILITY
### FOR PROFESSIONAL NEGLIGENCE
### (Liability for Defendants as Joint Venturers or Members of a Joint Enterprise)

78.    Plaintiffs, DR. GEIER and MR. GEIER, incorporate paragraphs 1 through 77, inclusive, by reference and request that they be made a part hereof.

79.    In the alternative, agents of the PSC disclosed their position for the first time in September 2009 that the PSC did not owe a contractual duty to pay the invoices submitted by the Plaintiffs.   Instead, the agents of the PSC alleged that in the 2004 Amendment, they agreed to represent the GEIERS in recovering compensation for these invoices from the Vaccine Court. The GEIERS did not agree with the PSC's interpretation of the 2004 Amendment, but

---

[3] Although the GEIERS' work on the test cases had the potential to benefit other attorneys and petitioners, that benefit was never realized as the test cases were unsuccessful.  Further, only those parties presenting the test cases, *i.e.* the PSC and its members, could have benefitted from the GEIERS' work in obtaining their fees from the Vaccine Court.

temporarily acquiesced in the attempt to recover these fees from the Vaccine Court as a preferable alternative to litigating with the PSC and its member law firms.

80.    The PSC designated certain PSC member attorneys ("PSC Attorneys") with the task of representing the GEIERS with their fee petition.  These PSC Attorneys undertook to represent the GEIERS by filing a fee application, briefs, and other papers with the Vaccine Court on behalf of the GEIERS.  Specifically, as part of the joint fee application, wherein the PSC and individual members of the Joint Enterprise requested reimbursement for their own costs and fees, the PSC included a request for the GEIERS' unpaid fees.  In addition, the PSC Attorneys filed numerous other briefs and an appeal, all on the GEIERS' behalf.  The GEIERS were further counseled by the PSC Attorneys concerning the invoices and entries that should be submitted to the Vaccine Court and those that should not.

81.    The petitioners represented by members of the PSC did not have any stake in the outcome of this fee application.  Only the PSC, its members, and the GEIERS had a stake in the outcome of this fee application.  No other expert witness or consultants remained unpaid at the time of the fee application.

82.    The GEIERS relied solely on the PSC and the PSC Attorneys to file the appropriate documentation and make appropriate arguments to the Vaccine Court to obtain the GEIERS' fees.

83.    The PSC and its members knew that the GEIERS were relying on the PSC and the PSC Attorneys to advise them, make legal arguments on their behalf, and file appropriate legal documents in order to obtain payment of their fees from the Vaccine Court.

84.    Despite clear conflicts of interest,[4] the Defendants were fully aware that the PSC had formed an attorney-client relationship with the GEIERS and that the PSC Attorneys were advocating a recovery for the GEIERS. In a July 2009 email, the PSC Attorneys informed the GEIERS that they "have undertaken a vigorous defense of [your] work…." They explained the arguments made on behalf of the GEIERS's behalf in response to the DOJ's objections and provide their "legal judgment" on which arguments are better to make to the Vaccine Court on behalf of the GEIERS. The PSC Attorneys further stated that "[n]otwithstanding these critiques of your work product and the previously identified problems with some of the rejected invoices, we continue to defend your entitlement to the fees submitted on your behalf in the interim fee petition. We will supplement our defense of your fees with the materials described above, and will keep you advised of progress on the resolution of your fee claim…" *Id*. Almost one year later, the PSC Attorneys again acknowledged their relationship with the GEIERS as their attorneys when they threatened to withdraw as the GEIERS' attorneys. An email states, "[b]eyond that, it appears that we no longer have a relationship based on trust or respect and we therefore are not the best lawyers to pursue your claimed fees and costs beyond the supplemental filing we plan to submit very soon….You may want to avail yourselves of that option going forward—either submitting additional material pro se, or retaining another attorney to submit them for you…."

85.    In 2007, the PSC inquired whether the Vaccine Court would compensate experts for the type of project that the PSC had hired the GEIERS to complete. PSC members, including

---

[4] The GEIERS performed their services for the PSC's test case styled *King v. Secretary of Health and Human Services*. The PSC had an attorney-client relationship with the Kings and therefore an obligation to zealously represent them. Representing the Kings was, at times, in direct conflict with the GEIERS' interests. For example, calling Dr. Greenland as a witness during the presentation of the test case may have been in the best interest of the Kings, but Dr. Greenland's criticism of the GEIERS was detrimental to the recovery of the GEIERS' fees.

Defendants, learned that the Court would *NOT* compensate experts for this work.  As attorneys who had agreed to represent the GEIERS, the PSC members, including Defendants, had a fiduciary and professional duty to disclose this information to the GEIERS but failed to do so. As a result, the GEIERS continued to work in good faith on the projects assigned to them by the PSC.  The PSC and its members knew there was little if any chance that the Vaccine Court would compensate the GEIERS for this work, but they did not advise the GEIERS of the Vaccine Court's ruling nor advise the GEIERS that they should discontinue their work on the projects assigned to them.

86.    The PSC Attorneys who represented the GEIERS in the recovery of their fees owed the GEIERS the duty of exercising the reasonable care and skill that reasonably competent attorneys would exercise in the same or similar circumstances. This duty includes, but is not limited to, a duty to represent the GEIERS diligently and zealously and the duty to avoid preventable harm to their legal rights and interests.  Despite this duty, the PSC attorneys representing the GEIERS failed to properly and adequately advocate the GEIERS' interests.  The PSC attorneys also had a duty to avoid conflicts of interest, and to the extent that conflicts of interest existed, should have obtained the written permission of the GEIERS to proceed with their representation after full disclosure and discussion of those conflicts.  Despite the existence of a substantial conflicts of interest, the PSC Attorneys did not provide the GEIERS with full disclosure and did not obtain their written permission to proceed with the representation of the GEIERS in the recovery of their fees and costs from the Vaccine Court.  Instead, these attorneys proceeded to represent the GEIERS, acting in a manner that was in derogation of the GEIERS' legal rights and best interests in deference to the best interests of their Vaccine Court clients.  As an example, the PSC and its agents notified the Court of their decision to replace the GEIERS

with a team headed by Dr. Phillippe Grandjean to perform the same or similar work that the GEIERS had been hired to perform.  When the test cases proceeded to trial, these attorneys, acting on behalf of the PSC and one or more claimants, called Dr. Greenland and others to testify, but did not call the GEIERS to testify.  Based on these decisions, any realistic opportunity for the GEIERS' to obtain a recovery from the Vaccine Court was lost.  Moreover, Dr. Greenland was openly critical of the GEIERS' work during his testimony, which further diminished the importance and necessity of the GEIERS' work in the eyes of the Vaccine Court. Indeed, the PSC members, including the Defendants, knew of Dr. Greenland's previous criticisms of the GEIERS' work, yet persisted in calling him to testify at trial.

87.    Thereafter, the PSC and its members undertook to represent the GEIERS in recovering their fees and costs from the Vaccine Court by requesting and advocating payment for the GEIERS in the PSC's fee application.  During this process, the PSC Attorneys filed completely inadequate briefs and pleadings with the Vaccine Court related to the request for the recovery of fees.  The PSC Attorneys frequently ignored requests from the GEIERS to provide information to them concerning the proceedings and the fee application.  The PSC Attorneys further ignored repeated requests that the fee application and other documents filed on behalf of the GEIERS be approved by the GEIERS.  The PSC Attorneys failed to competently address a number of important objections lodged in opposition to the GEIERS' fee application by the Respondent in the Omnibus Autism Proceedings.

88.    As a result of the incompetent representation provided by the PSC and the PSC Attorneys, the bulk of the GEIERS' requested fees and costs were denied by the Vaccine Court, even though the Special Master awarded more than $1,000,000 for other cost reimbursement to

the PSC. The PSC's member law firms also recovered the vast majority of their requested attorneys' fees through a settlement with the Department of Justice.

89. Following the nearly complete denial of the GEIERS's fee application, the matter was reviewed on appeal and recommended for further consideration. The original Special Master then reaffirmed his earlier decision. Despite the GEIERS' specific request that the matter be appealed again, the PSC Attorneys refused to appeal the Vaccine Court's Order, effectively ending the GEIERS' ability to recover the denied fees and costs.

90. The negligent and/or intentional acts and omissions of the PSC Attorneys in representing the GEIERS did not meet the prevailing standard of care for attorneys and resulted in the denial of the vast majority of the claims for the recovery of fees and costs associated with work performed by the GEIERS. The aforementioned acts and omissions by the PSC, through the PSC Attorneys, were the direct and proximate cause of the damages incurred by the GEIERS.

91. The Vaccine Court did award $33,130.55 for the consulting services performed by DR. GEIER. The Vaccine Court entered its order awarding this amount on December 13, 2010. The check for this fee was made payable to the King Family and their attorneys. This amount was tendered to the GEIERS, but the check was returned when the PSC Attorneys attached consequences to the negotiation of the check that would have adversely affected this litigation.

92. The PSC also refused to file a supplemental fee request with the Vaccine Court on behalf of the GEIERS, which would have enabled the GEIERS to recover those costs and fees incurred after the Interim Fee Petition was filed in 2008. This refusal resulted in the forfeiture of payment for all costs incurred and work performed by the GEIERS on behalf of the PSC after July 21, 2008.

93.    The PSC attorneys representing the GEIERS breached their legal duty to the GEIERS by failing to adequately, properly, competently, and zealously represent them in obtaining their fees from the Vaccine Court.

94.    As members of the PSC, Defendants are jointly and severally liable for the professional negligence committed by the PSC Attorneys.

**WHEREFORE,** Plaintiffs, DR. MARK R. GEIER and MR. DAVID A. GEIER, demand judgment against Defendants in an amount of SIX HUNDRED THOUSAND DOLLARS ($600,000.00), plus prejudgment interest at the statutory rate on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief as this Court deems reasonable and appropriate.

### COUNT SEVEN — VICARIOUS LIABILITY FOR FRAUD
### (Liability for Defendants as Joint Venturers or Members of a Joint Enterprise)

95.    Plaintiffs, DR. GEIER and MR. GEIER, incorporate paragraphs 1 through 94, inclusive, by reference and request that they be made a part hereof.

96.    Alternatively, at the time the 2004 Amendment was signed, Michael Williams, a partner in a PSC member firm, knew that the PSC was not a legally recognized organization (*e.g.*, corporation, partnership, limited liability company, etc.) that could legally be a party to and perform a contract.  By naming the PSC as the party to the contract, Williams knew that the Geiers would have no means to enforce the contract against the members of the PSC to collect their consulting fees.  In October 2004, Williams convinced the GEIERS to agree to the deferral of their fees for several years until such time as the PSC could file a fee application so that the Defendants could obtain the benefits of the GEIERS' work without incurring the legal obligation to pay for it.  Based on Williams' assurances, the GEIERS believed the PSC and its members would be responsible for the full payment of their fees.  However, Williams knew that the PSC

and its member firms had no intention of paying the GEIERS for their work following the execution of the 2004 Amendment.

97.    Williams' representations and inducements, described above, were intended to and did deceive the GEIERS into performing hundreds of hours of consulting services with no realistic or feasible means of recovering their fees.  The GEIERS reasonably relied on Williams' representation that the PSC was a legally cognizable entity that had legal standing to be a party to and perform a contract and on Williams' representations that the payment of their fees was not contingent on any event or outcome.

98.    At all relevant times herein, Williams was acting as a representative and agent for the PSC and its members, including Defendants.

99.    In 2007, the PSC inquired whether the Vaccine Court would compensate experts for the type of project that the PSC had hired the GEIERS to complete.  On May 25, 2007, the Vaccine Court issued its Order stating that it would *NOT* compensate experts for this work.   As a result, the GEIERS continued to work on the projects assigned to them by the PSC while the PSC members, including Defendants, knew that neither the PSC nor the Vaccine Court would compensate the GEIERS for this work.  At no time did any member of the PSC advise the GEIERS of the Vaccine Court's ruling or advise the GEIERS that they should discontinue to work on the projects assigned to them.   Instead, the PSC members, including Defendants, continued to receive and use the expert consulting services provided by the GEIERS.

100.    As a direct and proximate result of these fraudulent acts, Plaintiffs have suffered compensatory damages in the approximate amount of $600,000.00.

101.    As members of the Joint Enterprise, each of the Defendants is liable to the GEIERS for the fraudulent acts committed by the PSC and its members.

**WHEREFORE,** Plaintiffs, DR. MARK R. GEIER and MR. DAVID A. GEIER, demand judgment against Defendants in an amount of SIX HUNDRED THOUSAND DOLLARS ($600,000.00), plus prejudgment interest at the statutory rate on the outstanding balance until judgment, plus the costs of this suit, and for such other and further relief, including an award of punitive damages, as this Court deems reasonable and appropriate.

May 14, 2013

/s/ James M. Love_____
James M. Love, (*Pro Hac Vice*)
Titus Hillis Reynolds Love
   Dickman & McCalmon, P.C.
3700 First Place Tower
15 East Fifth Street
Tulsa, OK 74103
918-587-6800

James R. Klimaski, #243543
Klimaski and Associates, PC
1625 Massachusetts Avenue NW, Suite 500
Washington, DC 20036-2245
Telephone: 202-296-5600
Fax: 202-296-5601
Klimaski@Klimaskilaw.com
*Counsel to Dr. Mark Geier and David Geier*

## DEMAND FOR JURY TRIAL

Plaintiffs, DR. MARK R. GEIER and DAVID R. GEIER hereby demand a jury trial in connection with each and every Count in their Complaint.

/s/ James M. Love_____
James M. Love